UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, ex rel., DAVID A. LEFF, D.O. | )<br>)<br>) |
| Relator, | )<br>)<br>) |
| v. | ) Civil Action No. 11-CV-_____ |
| CHS PROFESSIONAL PRACTICE, P.C. d/b/a COORDINATED HEALTH, EMIL J. DIIORIO, M.D., THOMAS D. MEADE, M.D. and JOHN DOES 1-10 | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

11    5730

FILED
SEP 13 2011
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## COMPLAINT

Relator, David Leff, D.O., on behalf of himself and the United States of America, by and through his attorneys Fox Rothschild LLP, complains against Defendants as follows:

### PARTIES

1. Relator, David A. Leff, D.O. ("Relator" or "Leff"), is an adult individual residing at 4237 Route 212, Riegelsville, PA 18077.

2. Defendant, CHS Professional Practice, P.C., d/b/a Coordinated Health ("CHS") is a corporation formed and existing under the laws of the Commonwealth of Pennsylvania with a registered address located at 2775 Schoenersville Road, Bethlehem PA 18017.

3. Defendant, Emil J. DiIorio, M.D. ("DiIorio"), is a registered corporate officer of CHS and a medical doctor licensed to practice in the Commonwealth of Pennsylvania, and who maintains a business address located at 2775 Schoenersville Road, Bethlehem PA 18017.

4. Defendant, Thomas D. Meade, M.D. ("Meade"), is a medical doctor and orthopedic surgeon licensed to practice medicine in the Commonwealth of Pennsylvania, and

maintains a business address located at 1503 North Cedar Crest Boulevard, Allentown, PA 18104.

5. Defendants John Does 1 through 10 are individuals and/or legal entities who participated in the unlawful acts complained of herein but whose exact identities are currently unascertained. Relator respectfully reserves the right to amend the Complaint once the identities of said John Doe Defendants have been ascertained.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this matter pursuant to 31 U.S.C.A. § 3730 (civil action for false claims).

7. Defendants maintain offices and do business in the Eastern District of Pennsylvania and the acts and violations herein complained of took place in this District.

8. Relator is a resident of and a doctor of osteopathic medicine and board certified anesthesiologist licensed to practice medicine in the Commonwealth of Pennsylvania.

9. CHS owns and operates a number of hospitals, surgical centers, physical therapy facilities and chronic pain management centers in Pennsylvania and New Jersey, where its doctors and medical staff perform a substantial number of various surgeries on an annual basis.

10. DiIorio is a medical doctor and orthopedic surgeon licensed to practice medicine within the Commonwealth of Pennsylvania, and is the founder and principal of Defendant CHS.

11. CHS provides medical care to patients, employs physicians to treat patients, and handles scheduling and patient billing for patients receiving treatment at CHS.

12. Commencing on or about April 13, 2007, Relator was employed by CHS as a per diem employee responsible for providing anesthesia services on CHS' behalf.

13. Relator provided anesthesia services in this capacity until July 6, 2009, when he entered into an employment agreement with CHS.

14. In early 2009, Leff first became concerned about possible billing irregularities and potentially fraudulent behavior on the part of CHS.

15. In particular, on multiple occasions while acting as the anesthesiologist on duty, Leff was required to move constantly from patient to patient to patient, rarely able to provide the level of care necessary to qualify as personal and/or continuous care required by Medicare billing guidelines.

16. Upon information, CHS submitted fraudulent and/or otherwise inaccurate bills to Medicare for Leff's services, using Leff's provider number, without Leff's permission, knowledge or cooperation.

17. Ultimately, Leff demanded access to his billing records so that he or his professional expert could review and audit the anesthesia billing records submitted to Medicare that used Leff's provider identification number.

18. In response to that request, CHS stated that it would provide Leff with access to some, but not all, of the billing records that gave Leff cause for concern.

19. Upon information and belief, CHS is withholding access to those records from Leff because they are fraudulent and/or otherwise inaccurate, and because Medicare paid CHS for services that it did not perform and/or overpaid CHS for services that it did perform, but reported fraudulently and/or inaccurately.

20. In or about 2009, Defendant DiIorio convened a meeting of CHS' orthopedic surgery staff and provided them explicit instruction that each surgeon performing lower

extremity joint replacement procedures on any patient should also perform a lateral release procedure, regardless of whether it would apparently benefit the patient or not.

21. Upon information and belief, a number of CHS' orthopedic surgeons objected to DiIorio's directive on ethical grounds and out of concern for their patients.

22. In response, DiIorio told those orthopedic surgeons that even in situations where they determined that a lateral release would not be beneficial to the patient, the surgeon should still dictate each report to reflect the performance of a lateral release procedure, even where none had been performed.

23. Upon information and belief, CHS has (1) performed countless unnecessary and non-beneficial lateral release procedures for the purpose of obtaining extra compensation for each patient; and (2) submitted numerous fraudulent bills to Medicare requesting compensation for lateral release procedures where no lateral release procedure was performed.

24. In addition, Leff has witnessed Meade, an orthopedic surgeon who specializes in knee surgeries, engage in highly suspicious behavior in connection with the performance of multiple knee replacement surgeries.

25. On multiple occasions, Meade would have physician's assistants, and not licensed physicians, perform the vast bulk of a total knee replacement surgery, including opening, removal of bone and other tissue, and closing. Out of the forty to forty-five minute-long procedure, Meade spent approximately fifteen to twenty minutes in the operating room, and participated in the surgery only long enough to implant the artificial knee in the patient, quickly leaving and requiring the physician's assistants and/or nurses to complete the procedure without him. On any given day, Meade would schedule as many as a dozen knee replacement patients at one of CHS' locations and Meade would rotate quickly between the patients for the purpose of

quickly churning the replacements out at a high rate to maximize profitability at the expense of patient care.

26. Upon information and belief, Meade and CHS submitted fraudulent and/or otherwise inaccurate bills to Medicare that reflected that Meade performed all or substantially all of each knee replacement procedure in order to maximize compensation provided to CHS for each procedure, when, in fact, the bulk of each procedure was performed by physician's assistants and/or nurses.

27. Most disturbing to Dr. Leff, though, was the fact that often times two or more of Meade's patients were surgically anesthetized in the patient holding area concurrent with the patient(s) in the operating room(s) and this occurred under the direct orders of DiIorio.

28. In addition, following induction of surgical anesthesia in the PHA, often with both nerve blocks AND neuraxial anesthesia (spinal block or epidural block), patients were frequently left unattended except for nurses with multiple patient responsibilities; this occurred frequently with Meade's and DiIorio's patients and, again, was due in large measure to orders from Dr. DiIorio to "keep things moving so that the surgeons never had to wait in between patients."

## VIOLATIONS OF 31 U.S.C.A. § 3729

29. Relator incorporates by reference the preceding Paragraphs of this Complaint as if set forth at length herein.

30. Each of the Defendants violated 31 U.S.C.A. § 3729 by submitting false claims for the Medicare reimbursement of anesthesia and orthopedic surgical services.

31. Defendants DiIorio, Meade, and John Does 1-10 (the "Doctor Defendants") billed for procedures never rendered. Because the forms submitted for anesthesia and/or orthopedic surgical services do not require supplemental documentation, the Doctor Defendants were able to

falsify the patients' medical records to reflect the provision of services which in reality were never rendered or were not rendered in the manner reported to Medicare. These phantom services are services that seemingly go hand-in-hand with the services which were provided. This bundling of phantom services with legitimate services decreases the likelihood of detection by Medicare or its auditors.

32. Examples of bundling of practices is the billing of sedation of a patient as the provision of general anesthesia services, where a significant number of the patients were given a small amount of sedative and left largely unmonitored due to the nature of CHS' high-volume surgical practice. Those sedatives typically disorient an individual's sense of time, surroundings and memory, and that disorientation is only increased by the hypnotic and amnesiac properties of other drugs administered to those patients prior to and throughout surgery. As a result, the Doctor Defendants felt no hesitation about falsifying the anesthesia records to reflect the provision of monitoring services not rendered, consultation services not provided and the characterization of a procedure as more difficult than it was in order to record a higher classification and to reap the pecuniary benefit of an upward adjustment in the conversion factor.

33. Likewise, at DiIorio's direction, CHS' orthopedic surgeons routinely bundled the lateral release procedure with other procedures.. A lateral release is a minor surgical procedure to help realign the kneecap by cutting through an overly tight retinaculum. While it is helpful to some patients, it is not as commonly performed as it once was because it was often of no benefit to the patient. The side effects of a lateral release are the same as with most forms of knee surgery – localized bleeding in the knee, bruising, swelling and pain that decreases with time and physical therapy. A patient who is having one type of knee surgery performed would not know whether a lateral release was performed while they were under anesthesia, and would not know

whether such a procedure would be necessary or appropriate for their diagnosed knee problem. CHS and DiIorio used that to their advantage by performing unnecessary lateral releases and by instructing other orthopedic surgeons to do the same. In addition, upon information and belief, CHS, DiIorio and one or more of the John Doe Defendants also submitted fraudulent bills and records to Medicare reporting that lateral release procedures were performed where they were not. Futhermore, it is Leff's contention that CHS has been fraudulently billing for daily management of continuous blocks performed on the day of surgery, including subcutaneous catheters placed in the O.R. following knee replacement surgeries, clearly a non-reimbursable item.

34. The conduct described above was discovered by Leff, who was not only not informed of his right to review all Medicare claim forms submitted with his provider identification number, but who was outright refused access to such medical records after requesting access to them.

35. These reimbursement request forms were prepared under the direction of the principals of CHS and contained false information, as described *supra*.

WHEREFORE, Relator, David A. Leff, D.O., seeks such relief as the Court deems appropriate under the provisions of 31 U.S.C.A. § 3730, *et seq.*

FOX ROTHSCHILD LLP

_____
Alfred J. Monte, Jr. (Pa.I.D. 45464)
W. Christian Moffitt (Pa.I.D. 206770)
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA 19422

*Attorneys for Relator
David A. Leff, D.O.*

Dated: 9/13/11